ROBINSON *v.* GEORGIA RAILROAD AND BANKING CO.

The mother of an illegitimate child has no right of action, under the Civil Code, § 3828, for his homicide.

Argued January 24, — Decided February 10, 1903.

Action for damages. Before Judge Reid. City court of Atlanta. July 8, 1902.

The action was for the homicide of the plaintiff's son, who it was alleged was killed by the negligent running of a train of the defendant company. From an amendment to her petition it appeared that her deceased son was an illegitimate child. To the petition as amended the defendant demurred on the ground that no cause of action was set forth; for the reason that the mother of an illegitimate child can not recover for his homicide.

*Arnold & Arnold,* for plaintiff. *Joseph B. & Bryan Cumming* and *Sanders McDaniel,* for defendant.

FISH, J. This record presents but a single question for our determination, and that is, has the mother of an illegitimate child a right of action, under the Civil Code, § 3828, for his wrongful or negligent homicide ? That section reads as follows: "A widow, or, if no widow, a child or children, may recover for the homicide of the husband or parent; and if suit be brought by the widow or children, and the former or one of the latter dies pending the action, the same shall survive in the first case to the children, and in the latter to the surviving child or children. The husband may recover for the homicide of his wife, and if she leaves child or children surviving, said husband and children shall sue jointly, and not separately, with the right to recover the full value of the life of the deceased, as shown by the evidence, and with the right of survivorship as to said suit if either die pending the action. A mother, or, if no mother, a father, may recover for the homicide of a child minor or sui juris, upon whom she or he is dependent, or who contributes to his or her support, unless said

child leave a wife, husband, or child.    Said mother or father
shall be entitled to recover the full value of the life of said child."
In seeking for the true meaning of this section as to the question
under consideration, we must be guided by two firmly established
and familiar rules of construction : (1) that statutes in derogation
of the common law are to be strictly construed; and (2) that,
prima facie, the word " child," or " children," when used in a stat-
ute, will, or deed, means legitimate child or children; in other
words, bastards are not within the term " child " or " children."
This court on several occasions, in construing this very section,
has applied to it the first of these rules.    In *Smith* v. *Hatcher*,
102 *Ga.* 158, it was held : " It is essential to the maintenance of
an action by a parent for the homicide of his child, that the for-
mer should, at the time of the homicide, be to a material extent
dependent upon the latter for a support, and that the child should
then be actually contributing thereto. "    In the opinion Lumpkin,
P. J., said :   " The statute giving a right of action to a parent for
the homicide of a child, and conferring upon the former the right
to recover the full value of the child's life, is, to say the least, a
harsh one, and must be strictly construed. "    Substantially the
same language is used by the learned Justice in *Georgia Railroad
Co.* v. *Spinks*, 111 *Ga.* 573.    In *Marshall* v. *Macon Sash Co.*, 103
*Ga.* 725, it was held :   " A child has no right of action for the homi-
cide of its stepfather."    In that case it was alleged that the plain-
tiffs were the only heirs of their stepfather, he having left no wid-
ow and no other children ; that he married the mother of the plain-
tiffs eight years prior to his death, and from the time of such mar-
riage to the date of his death he maintained and supported the
plaintiffs as his children, rearing them in his own home, feeding,
clothing, and schooling them, and exercising over them complete
parental control, by consent of their mother and themselves; and
that such relation continued up to the date of his death, up to
which time he not only contributed to their support, but they were
entirely dependent upon him for a livelihood.    The action was dis-
missed on general demurrer.    Mr. Justice Lewis said :   "The right
of action provided for in the above code section [3828] did not
exist at common law.    The statute is, therefore, in derogation of
the common law ; and applying to it the universal rule of strict
construction, we can not see how there is any escape from the con-

clusion that the legislature never contemplated giving a child any right of action for the homicide of a stepfather."

Instances of the application by this court of the second of these rules of construction are: *Hicks* v. *Smith*, 94 *Ga.* 809, *Floyd* v. *Floyd*, 97 *Ga.* 124, and *Johnston* v. *Taliaferro*, 107 *Ga.* 6. In the first of these cases it was held: "Where, by the provisions of a will made by the great-grandfather of a bastard on the paternal line, an estate is vested in the father of a bastard for life with remainder over to his children, and, he failing issue, remainder over in fee to other great-grandchildren of the testator, upon the death of the father of such bastard without issue other than such legitimated bastard, while the latter, by force of the statute, may take by descent from his father, he can not take by purchase under the will of his great-grandfather, which devises the estate to his great-grandchildren generally, there being in the will no language expressly indicating a purpose to include within the scheme of his benevolence any bastard descendants." Mr. Justice Atkinson, in that case, said: "The word *children*, as a general rule, means legitimate children, and will not be extended by implication so as to embrace children other than legitimate, unless such construction be necessary to carry into effect the manifest purpose of the testator." In the second case it was held: "The term 'child,' as employed in section 2664 of the code, does not include a bastard so as to entitle him to the benefits of its provisions, and the conclusive presumption of a gift resulting from continuous possession, under the circumstances therein set forth, arises only in favor of legitimate children." In the opinion Chief Justice Simmons said: "It is well settled that at common law the words child and children mean only legitimate child and children." In the third case it was held: "The words 'child' and 'children,' appearing in a deed conveying to an unmarried female certain property during her life, and at her death to such child or children as she may leave living at the time of her death, will not include an illegitimate child of such female born several years after the making of the deed, unless it plainly appears from the language of the instrument that it was the intention of the grantor that an illegitimate child was to take thereunder. The word 'issue,' used in a subsequent part of the deed under consideration in the present case, is to be given the same meaning as the words child or children." Mr. Justice Cobb, in deliv-

ering the opinion, said: "The words *children* and *issue* in deeds, wills, and other conveyances must be held to mean legitimate children or issue, unless the context is such as to require a different meaning, or the circumstances surrounding the execution of the paper are such as to make the words import other than legitimates." (P. 20.)

The exact question we have in hand has been decided by courts in other jurisdictions, and upon the application of the two rules of construction under discussion. In Dickinson *v.* North-Eastern Railway Co., 2 Hurl. & Colt. 735, it was held, that the word "child," in sec. 2 of the 9 & 10 Vict. c. 93 (Lord Campbell's act, which is the prototype of our statute), means a legitimate child; and that an action could not be maintained on behalf of a bastard child against a railway company for the homicide of its mother. Counsel for the plaintiff in that case contended that the case was within the spirit of the act, for beyond question the child was dependent solely on the mother, and that the act must mean *any* child who was deriving pecuniary advantage, and is deprived thereof by the death. Pollock, C. B., said: "We have no doubt that in the act of parliament, as in all others, the word 'child' means 'legitimate' child only." In Gibson *v.* Midland Railway Co., 2 Ontario, 658, it was held, under a statute of Ontario similar to Lord Campbell's act, the mother of an illegitimate child could not recover damages for its death. To the same effect is Clarke *v.* Carfin Coal Co. (Scotland), App. Cas. (1891) 412. In Harkins *v.* Philadelphia & Reading R. Co., 15 Phila. 286, it was held: "The mother of an illegitimate child is not within the words or meaning of the act of April 26, 1855, which enacts that the persons entitled to recover damages for any injury causing death shall be the 'husband, widow, children, or parents of the deceased, and *no other relative.*'" In his opinion, Thayer, P. J., after citing Dickinson *v.* North-Eastern Ry. Co., supra, said: "The line of argument adopted by the plaintiff's counsel in that case was much the same as that pursued by the plaintiff's counsel in the present case, viz., that the legislature intended the right of action to be coextensive with the moral right to support; that, for many purposes, the law recognizes the relationship of a bastard child to his parent; and that, therefore, the question of legitimacy or illegitimacy is immaterial. But we are not convinced by this reasoning.

It is true that some rights have been accorded by statute to illegitimate children and their mothers which did not exist at common law. The act of 27th of April, 1855, sec. 3 (Purdon, 810), enacts that illegitimate children shall take the name of the mother, and that they and the mother respectively shall have capacity to take or inherit from each other personal estate as next of kin and real estate as heirs, but this act conferred only limited powers upon persons of this description. It did not legitimate illegitimate children, and it was so ruled by the Supreme Court of this State," citing cases. In conclusion the learned Justice said: "In addition it may be observed that, by the act of 26th of April, 1855, the right of action is given, not to the mother alone, but to the ' parents' of the deceased. If the effect of the act of 27th of April, 1855, were to legitimate bastards for all purposes, and to give to them and their natural parents the standing in all respects which the law accords to lawful children and lawful parents, then the natural father would equally with the natural mother be within the enabling words of the act. We do not think this to have been the purpose of the law, but are of the opinion that the legislature, in enacting the act of 26th of April, 1855, and when using the words ' husband, widow, children, parents of the deceased, and no other relative,' had in view the family relation as constituted and recognized by law, and that it was not intended to extend the benefits of' the act to persons not falling within the legal definition of the enumerated relationships." In Alabama & Vicksburg Railway Co. *v.* Williams, 78 Miss. 209, it was held: " A mother can not maintain an action for damages caused by the wrongful killing of her bastard son," citing Illinois R. Co. *v.* Johnson, 77 Miss. 727, where it was held that an illegitimate half-sister can not maintain an action under a statute of Mississippi entitling a sister or brother to sue for the homicide of a sister or brother. In further support of the proposition that the right of action for a negligent or wrongful homicide is purely a statutory one and in derogation of common law, and that therefore the statute giving the right must be strictly construed and the case brought clearly within its provisions to enable the plaintiff to recover, we select from a number of cases the following: Good *v.* Towns, 56 Vt. 410, wherein it was held : " Under the civil damage act, giving an action to one ' dependent' on the deceased, a plaintiff claiming to be his

widow must show a lawful marriage, and one claiming to be his child must show his legitimacy." Rowell, J., said: " It is true, as contended, that the language of the statute is broad, ' in any manner dependent'; but after all we think it should be construed to mean a legal dependency only, the same as though it read, ' in any manner legally dependent.'" Dickinson v. North-Eastern Railway Co., 2 Hurl. & Colt, 753, was approvingly cited. Thornburg v. American Strawboard Co., 141 Ind. 453, wherein it was held that a statute giving a father a right of action for the homicide of his child confers no right upon one who marries the mother of a bastard child, and receives the child into his home as a member of his family, to sue for the death of the child. McDonald v. Pittsburg Ry. Co., 144 Ind. 459, in which it was held, a bastard is not a child within the meaning of the statute of Indiana providing that a father may maintain an action for the death of a child. It appeared in that case that the plaintiff, when the child for whose death the action was brought was six months old, received him from his mother and relieved her of his care and custody, and acknowledged him as his own son, and afterwards discharged every duty as a parent towards him, and received from him all the services, obedience, and respect due from a legitimate son; and that his mother abandoned him and was dead; and that the deceased had no guardian or next of kin. The plaintiff's action was dismissed on demurrer. Citizens St. Ry. Co. v. Cooper, 22 Ind. 459, in which it was held: "The right of a father or mother to recover damages for the wrongful killing of a child is statutory, and such an action can not be maintained by a woman, where she is not the mother and has not legally adopted the child, although it was given to her in infancy, and she had ever since maintained and treated it as her own." Western Union Tel. Co. v. McGill, 57 Fed. Rep. 699, where it was held, under a statute of Kansas, giving a right of action for death by wrongful act, and providing that the damages must enure to the exclusive benefit of the widow and children, if any, or next of kin, that a widower could not recover for the wrongful death of his wife, who left children living, because he was not one of the beneficiaries of the statute, although under the Kansas statute of descent and distribution of estates a husband who survives his wife is entitled to a share of her personal estate. In the opinion Sanborn, J., referring to the statutes giving a right

of action for the negligent killing of another, said: "Under these statutes the following rules have been established without dissent among the authorities: The action under them is entirely the creature of the statute. If the right to maintain it and to recover the damages allowed in it in any case is not expressly given by these statutes, the judgment rendered can not stand. Where such a statute giving a new right of action for damages specifies the person or class of persons for whose exclusive benefit the damages are to be recovered, no damages to any other person or class of persons can be allowed in the action based on the statute." In 1 Shearman & Redfield on the Law of Negligence, § 136, it is said: "Where, as in England, Maine, New Hampshire, Massachusetts, Maryland, Pennsylvania, Louisiana, Georgia, Alabama, Missouri and Kansas, and other States, the statute [giving a right of action for homicide] specifies the 'child' of the deceased, an illegitimate child is not within the description."

There are, however, authorities of a different tenor. In Muhl's admr. *v.* Michigan Southern R. Co., 10 Ohio St. 272, the headnote is "In an action by the administrator of a woman killed by the carelessness of the servants of a railroad company in running its locomotive, the petition alleging and the proof showing the deceased to have left a son as her sole surviving heir — held: 1st. That it is error to order a nonsuit on the ground that such child is illegitimate. 2d. That the fact of such child's legitimacy or illegitimacy can in no respect affect the right of action in his behalf." It appears that the suit was based upon a statute of Ohio, which provided that the action for a homicide should be brought by the personal representative of the deceased, and that the recovery should be distributed to the "widow and next of kin, in the proportions provided by law in relation to the distribution of personal estates left by persons dying intestate." The deceased left a lawful sister and an illegitimate son. The trial court granted a nonsuit, because the child alleged in the petition to be next of kin was a bastard. This ruling was reversed by the Supreme Court, upon the ground that the action was properly brought in the name of the personal representative of the deceased, and that the question whether the child or sister should be regarded as the next of kin did not in any way affect the cause of action, for the reason that the right to sue existed in favor of the administrator in either case. It is true

the court added: " But it is quite evident that the nearness or
remoteness of kin on the part of the son of the deceased mother
neither in fact nor by any canon of descent under the statute de-
pended at all upon the circumstance of his being born within or
without lawful wedlock. " In view of the ruling made, this re-
mark seems merely obiter. In Security Title Co. v. West Chicago
R. Co., 91 Ill. App. 332, it was held: "1. It was the intention of
the legislature, by section 2 of the act of 1872 (Laws 1872, 353),
. . to remove the common law disability of illegitimate children.
2. Under the statute requiring compensation for causing death
by wrongful act, neglect or default, an action can be maintained
for the benefit of the mother of an illegitimate child, as the next
of kin of such child. " The Illinois statute seems to be the same
as the Ohio statute just referred to, and provides that the recovery
" shall be for the exclusive benefit of the widow and next of kin,"
etc. As the mother of an illegitimate child could inherit from it
under the law of Illinois, the court held that she was included within
the term, " next of kin " of such child. In Marshall v. Wabash R.
Co., 120 Mo. 275, it was held: " Under the provisions of section
4425, Revised Statutes 1889, giving the father and mother the
right to join in an action for damages for the wrongful death of
their unmarried minor child, and, in case of the death of either
parent, that such suit may be brought by the survivor, the mother
of a deceased illegitimate minor child may in such case sue alone,
and the reputed father need not and should not be made a party. "
In delivering the opinion Black, P. J., said : " The harsh rules of the
common law have been modified by express statute in this State, so
that the mother is declared the natural guardian of her illegitimate
child. R. S. 1889, sec. 5279. And section 4473 declares : ' Bas-
tards shall be capable of inheriting and transmitting inheritance on
the part of their mother, and such mother may inherit from her
bastard child or children in like manner as if they had been law-
fully begotten of her.' " It may be stated that the plaintiff in this
case finally brought his action against the same defendant in the
circuit court S. D. Ohio, W. D., and while the case was dismissed
upon the ground that the statute upon which it was based was pe-
nal and, for that reason, could be enforced only within the sover-
eignty of its creation, yet Sage, J., said, as the matter had been fully
argued before him, he would express his opinion as to whether

the plaintiff had any standing in court. His opinion was that the statute extended only to the cases of the natural-born legitimate children, and no action could be maintained by a mother for the death of her bastard child. Marshall *v.* Wabash R. Co., 46 Fed. 269.

In this State the mother of a bastard child is entitled to its possession, unless it is legitimated by the father, and, being the only recognized parent, may exercise all the paternal power. Civil Code, § 2509. "Bastards have no inheritable blood, except that given to them by express law. They may inherit from their mother, and from each other, children of the same mother, in the same manner as if legitimate. If a mother have both legitimate and illegitimate children, they shall inherit alike the estate of the mother. If a bastard dies leaving no issue or widow, his mother, brothers, and sisters shall inherit his estate equally. In distributions under this law the children of a deceased bastard shall represent the deceased parent." Ib. § 2510. While it is evidently true that the status of bastards under our law is greatly superior to what it was under the common law, yet it can not be said that they have been legitimated, at least for all purposes, and placed upon the same footing in all respects as children born in lawful wedlock; and, in view of the decisions of this court, above cited, to the effect that the statute giving a right of action for a homicide should be strictly construed, and that the word "child," used in a statute, prima facie means a legitimate child, we are constrained to hold that the mother of an illegitimate child has no right of action for his wrongful or negligent homicide. The statute provides that "A mother, or, if no mother, a father, may recover for the homicide of a child minor or sui juris, upon whom she or he is dependent, or who contributes to his or her support, unless said child leave a wife, husband, or child. Said mother or father shall be entitled to recover the full value of the life of said child." There are no words in the statute qualifying the word "child" in any particular, nor is there anything in the context which would authorize a conclusion that the legislature intended to use the word in any broader sense than is usually given it in statutes, but, on the contrary, the context plainly indicates, to our mind, that the child in legislative contemplation was the child of a lawful marriage, whose mother, or, if no mother, *whose father*, might recover for his homicide. *Judgment affirmed. By five Justices.*

CANDLER, J.　I concur in the judgment rendered in this case, because of the previous rulings of this court, which seem to be binding upon us.　If it were an original question, I would never agree to a judgment which holds that the doubly unfortunate mother of a child whose sole parent she is and upon whom she is dependent — this dependence probably due to the fact of its miserable birth — can not recover for its homicide, although our lawmakers have declared that " a mother may recover for the homicide of a child upon whom she is dependent, or who contributes to her support."