[No. 12932.    Department Two.    March 11, 1916.]

PEERLESS PACIFIC COMPANY, *Respondent*, v. E. BURCKHARD, *Appellant*[1]

MARRIAGE — REMARRIAGE AFTER DIVORCE — VALIDITY. A marriage within the six months prohibited by the divorce, outside the jurisdiction, where the parties went for that purpose and immediately returning without intent to change their domicile, is void and the issue is not legitimate.

EXEMPTIONS — "HEAD OF FAMILY" — "HOUSEHOLDER" — "CHILD" — STATUTES. A man living on the premises with his illegitimate minor child cannot claim a homestead exemption as the head of a family or a householder, within Rem. & Bal. Code, §§ 553 and 565, defining the head of a family and a householder as every person who has . . . his minor child residing with him or under his care and maintenance.

EXEMPTIONS — INSURANCE MONEY — TIME OF FIRE — HOMESTEAD SUBSEQUENTLY PERFECTED. Where the right to claim a homestead exemption in a house destroyed by fire did not exist at the time of the fire, an exemption in the insurance money cannot be claimed, although a homestead exemption was thereafter perfected before the trial in an action garnisheeing the insurance money; in view of Rem. & Bal. Code, § 568, which exempts insurance money only "whenever property which by the laws of the state is exempt from execution or attachment, is insured and is destroyed by fire" etc.

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered February 1, 1915, in favor

[1]Reported in 155 Pac. 1037.

of the plaintiff, in garnishment proceedings, tried to the court. Affirmed.

*A. Emerson Cross*, for appellant.

*T. H. McKay*, for respondent.

MAIN, J.—This action involves the question of exemptions.

The material facts may be briefly stated as follows: On May 3, 1913, E. Burckhard was divorced from his then wife by a decree of the superior court for Chehalis county. On June 30, 1913, Burckhard purchased certain lots or tracts of land in Aberdeen, Washington, on contract. On August 25, 1913, and within six months after the divorce decree was entered, Burckhard and Elsie Warwick were married at Westminster, British Columbia. Prior to this marriage, Burckhard had been engaged in the plumbing business in Aberdeen, and on the day following the marriage, the parties thereto returned to Aberdeen, where Burckhard continued his plumbing business. They went to Westminster for the sole purpose of being married, expecting immediately to return to Aberdeen.

On or about October 1, 1913, Burckhard and wife entered into possession of the real estate which he had purchased, and occupied the house erected thereon. The house and household goods were insured under a policy issued by the Girard Fire Insurance Company. On April 18, 1914, the Peerless Pacific Company recovered a judgment against Burckhard in the sum of $432.19. On or about the 28th day of April, 1914, the dwelling house and a portion of the household goods were damaged by fire. On May 1, 1914, the Peerless Pacific Company caused a writ of garnishment to be issued and served upon the insurance company, the purpose of this garnishment being to reach the money due from the insurance company to Burckhard by reason of the fire. On July 2, 1914, Burckhard remarried Elsie Burck-

hard at Aberdeen, Washington. On July 7, 1914, Burckhard filed a declaration of homestead upon the real estate. Thereafter he intervened in the garnishment proceeding and claimed the proceeds of the insurance as exempt.

Prior to the date of the fire, a child was born as a result of the union occasioned by the marriage ceremony performed at Westminster, British Columbia. After the issues had been framed upon the complaint in intervention, the case came on for trial on November 27, 1914, and resulted in a judgment sustaining the garnishment and denying the right of Burckhard to exemptions. From that judgment, Burckhard appeals.

From the facts stated, it appears that, prior to the time the fire occurred, Burckhard, his wife, and child, by virtue of the Canadian marriage, were residing together, using the property which was damaged or destroyed by fire. After the writ of garnishment had been served, and prior to the time when the case came on for trial, another marriage ceremony was performed about the validity of which there is no question.

The first question is whether Burckhard, at the time the fire occurred, was entitled to a homestead, and personal property exemptions, as the head of a family. The parties having gone out of this jurisdiction for the sole purpose of having a marriage ceremony performed, and immediately thereafter returning, having had no intention of changing their domicile, the marriage ceremony thus performed is in law void, and the issue of such marriage is not legitimate. *State v. Fenn*, 47 Wash. 561, 92 Pac. 417, 17 L. R. A. (N. S.) 800; *Pierce v. Pierce*, 58 Wash. 622, 109 Pac. 45. This proposition, apparently, is not seriously controverted.

But it is contended that Burckhard was the head of a family, or a householder, notwithstanding the void marriage, because he had residing with him his minor child. Section 553, Rem. & Bal. Code (P. C. 223 § 49) defines the head of a family, so far as here material, as being:

"Every person who has residing on the premises with him or her, and under his or her care and maintenance . . . his or her minor child . . ."

Section 565 (P. C. 81 § 877) defines a householder as:

"Every person who has residing with him or her, and under his or her care and maintenance, . . . his or her minor child . . ."

The question then is whether the word "child," as used in these statutes, includes a child not legitimate. If it does, then Burckhard was a householder and the head of a family, and was entitled to exemptions, as he was living with and supporting the child and its mother. Where the word child or children is used in a statute, without qualifying words, and where the context does not show a contrary meaning, the general, if not the universal construction, is that the word child or children does not include an illegitimate child. 7 Cyc. 125; *Robinson v. Georgia R. & B. Co.*, 117 Ga. 168, 43 S. E. 452, 97 Am. St. 156, 60 L. R. A. 555; *Overseers of Poor of Forest City v. Overseers of Poor of Damascus*, 176 Pa. St. 116, 34 Atl. 351; *Hayworth v. Williams*, 102 Tex. 308, 116 S. W. 43, 132 Am. St. 879; *McDonald v. Pittsburgh, C. C. & St. L. R. Co.*, 144 Ind. 459, 43 N. E. 447, 55 Am. St. 185, 32 L. R. A. 309; *Alabama & Vicksburg R. Co. v. Williams*, 78 Miss. 209, 28 South. 853, 84 Am. St. 624, 51 L. R. A. 836. Other authorities to the same effect might be cited. In the statutes above referred to, the word child is used without qualification; and there is nothing in the context which would indicate that the legislature intended to broaden its meaning. It follows, therefore, that Burckhard was not the head of a family, or householder, by reason of the fact that he was living with and maintaining the child.

Our attention has been called to the case of *In re Gorkow's Estate*, 20 Wash. 563, 56 Pac. 385. But that case arose under the statutes of descent and is not applicable here. Section 1345, Rem. & Bal. Code (P. C. 409 § 643) under

the chapter headed "Descent," provides that illegitimate children may be considered as heirs under the conditions named in the statute. This case does not meet the conditions there named.

Some authorities have been cited from other jurisdictions where a father, living with and supporting his illegitimate child, has been held to constitute the head of a family. But the states in which those cases arose did not have statutes which defined, as in this state, what is meant by "householder" or "head of a family." The exemption ran to the family, and the question became one for the courts to determine what constituted a family relation. The legislature in this state having defined the terms, this court must accept the definition thus prescribed.

It is contended, however, that, notwithstanding the fact that Burckhard may not have been the head of a family or a householder at the time of the fire, he became such by reason of his subsequent valid marriage, which occurred prior to the time the case was tried in the superior court. In other words, the contention is that, even though Burckhard was not the head of a family or a householder at the time of the fire, and at the time the writ of garnishment was served, he became such prior to the time of the entry of the judgment, and that the question should be resolved as of the date of the judgment.

The right to claim moneys due from an insurance company by reason of a fire, as exempt, is derived from Rem. & Bal. Code, § 568 (P. C. 81 § 879) which provides:

"Whenever property, which by the laws of this state is exempt from execution or attachment, is insured and the same is destroyed by fire, then the insurance money coming to or belonging to the person thus insured, to an amount equal to the exempt property thus destroyed, shall be exempt from execution and attachment."

Under this statute, insurance money coming to the insured is exempt "whenever property which by the laws of this state

is exempt from execution or attachment is insured and the same is destroyed by fire." In this case, property which was exempt was not insured. Neither was it destroyed by fire, because, up to and including the time when the fire occurred, Burckhard was not the head of a family or a householder. To hold that the insurance money was made exempt because Burckhard became the head of a family and a householder subsequent to the fire and prior to the time of the trial, it would be necessary to read into the statute a provision to the effect that if property is insured which is not exempt and is damaged and destroyed by fire, and if the fire had not occurred the property would have been exempt at the time of the trial, then the insurance money shall be exempt. To so construe the statute would be legislation, and not judicial construction.

The judgment will be affirmed.

MORRIS, C. J., HOLCOMB, PARKER, and MOUNT, JJ., concur.