[Civ. No. 10801. Third Dist. Oct. 9, 1964.]

Estate of EDMUND WILLIAM WOODWARD, Deceased. CHERYL LYNNE WOODWARD, a Minor, etc., Petitioner and Respondent, v. ALBERT H. NEWTON, JR., as Public Administrator, etc., Objector and Appellant.

114

Mark M. Brawman for Objector and Appellant.

Harry A. Hammond for Petitioner and Respondent.

PIERCE, P. J.—This appeal involves the sole question, one of first impression in California, whether an illegitimate minor child, not publicly acknowledged and adopted by the father (see Civil Code, § 230), and not made an heir by written acknowledgment (see Prob. Code, § 255), is made eligible to receive a family allowance from the estate of such father under Probate Code section 680.[1] The trial court answered this question affirmatively and ordered an allowance. We affirm this order.

The undisputed facts may be briefly stated. Petitioner is the illegitimate child of decedent and Mildred Lineberry (now Thomas) who, after becoming pregnant with petitioner, broke off the meretricious relationship with decedent and married another man. Woodward never saw the child and did not see Mildred after the birth of the child. After decedent's death petitioner through her guardian *ad litem* petitioned decedent's personal representative, the public administrator, for a family allowance under Probate Code section 680. Substantial proof of paternity was made and is undisputed on this appeal. The probate court ordered an allowance of $75 per month. Neither the child's need nor the sufficiency of estate assets to meet the award is here questioned. The sole contention of the public administrator is that petitioner, being an illegitimate child, is not included within the class "minor children" within the meaning of said Probate Code section.

The contention is principally predicated upon the proposition that an illegitimate child is not entitled to *inherit* from his father unless the latter acknowledges paternity in writing (Prob. Code, § 255), or unless the parents subsequently marry

---

[1]Probate Code section 680 provides in part: "The widow, widower, minor children, and adult children who have been declared incompetent by order of court are entitled to such reasonable allowance out of the estate as shall be necessary for their maintenance according to their circumstances, during the progress of the settlement of the estate, which, in case of an insolvent estate, must not continue longer than one year after granting letters. . . ."

(Civ. Code, § 215), or unless there has been an adoption by public acknowledgment by the father (Civ. Code, § 230).

█ Petitioner-respondent's counterargument postulates, and we think soundly, that the right to the family allowance does not rest upon, nor equate with, the right of inheritance. (*Estate of Myers*, 115 Cal.App. 443 [1 P.2d 1013], and see cases noted *infra*.) She states that it is an extension of the obligation of support and by statutory provision in California (Civ. Code, § 196a), the father of an illegitimate child is obligated to "give him support and education suitable to his circumstances." True, this court (per Justice Plummer) in *Myers* v. *Harrington*, 70 Cal.App. 680 [234 P. 412], held that the obligation of a father to support his illegitimate minor child did not, in the absence of a divorce court decree prior to death fixing his liability, continue after his death.[2] But that decision was not concerned, as we are here, with the interpretation of a *statute* extending a parental obligation of support beyond death. Probate Code section 680, providing for the making of an allowance during probate to specified members of the decedent's family, has, as respondent contends, been regarded as an extension of the decedent's obligation of support. (*Estate of Lux*, 100 Cal. 593, 603 [35 P. 341].)

█ At common law there was no power in the probate court to provide for the support of the decedent's family during probate to the obvious detriment and frustration of his creditors and heirs at law. The power rests upon statutory authorization. (*Estate of McSwain*, 176 Cal. 280, 283 [168 P. 117].) █ But "the family allowance is favored by the law and . . . section 680 is liberally construed by the courts. . . . █ It was enacted out of concern for the needs of the surviving family during the period of readjustment following the death of a spouse. [Citations.]" (*Estate of Blair*, 42 Cal.2d 728, 730 [269 P.2d 612].) █ The word "family" is not synonymous with "household." It includes those members of the family living apart from decedent but for whose support he is liable, e.g., a wife living apart under a decree of separate maintenance. (*Estate of Parkinson* (1924) 193 Cal. 354 [224 P. 453]; *Estate of Caldwell*, 67

---

[2]*Myers* v. *Harrington*, *supra*, indicated by way of dictum that the deceased parent's estate would be liable for such support if the obligation had been crystallized by divorce decree. This dictum became the Supreme Court ruling two years later in *Estate of Smith* (1927) 200 Cal. 654 [254 P. 567]. The *Myers* decision also pointed out that by statute (Civ. Code, § 205) outlays by the county for the support of children were, under circumstances therein enumerated, recoverable from the deceased parent's estate.

Cal.App.2d 652 [155 P.2d 380]; *Estate of Hale,* 117 Cal.App. 545 [4 P.2d 263].) Claims for a family allowance are "preferred to most other claims (Prob. Code, § 750); and upon proper application, it must be granted even if the estate is insolvent." (*Estate of Blair, supra,* 42 Cal.2d 728, 730.) That case also states, referring to the family allowance and the probate homestead (on p. 731): "Both are based on the policy that places the welfare of the decedent's surviving family above the interests of his creditors, heirs, legatees, and devisees; but the rights they confer are for the members of the family only, persons outside the family cannot assert them by assignment or succession." A holding that the family allowance provision is an extension of the decedent's obligation of support *and that the right has priority over the rights of heirs* is also by necessary inference a holding that heirship is neither a necessary nor relevant concomitant to an enjoyment of the family allowance. In fact the need for aid during the "period of readjustment following . . . death" will be all the more vital to those members of the decedent's family who do not inherit.

As indicated above, no California case has ruled on the right of an illegitimate child to a family allowance. The early case, *Estate of Blythe* (1893) 99 Cal. 472 [34 P. 108], apparently accepted the view but rejected evidence accepted by the probate court as proof of paternity.[3] On the other hand, in *Estate of Filtzer* (1949) 33 Cal.2d 776 [205 P.2d 377], which holds that a child of a bigamous marriage had been legitimated under the facts of the case, and was therefore entitled to a family allowance may be considered to have assumed that but for the legitimation no allowance could be made. The question, however, was not mentioned, the decision does not bind us (3 Witkin, Cal. Procedure, Appeal, § 225, p. 2440) and, absent any discussion therein, we receive no aid therefrom towards decision in the case at bench.

 In Continuing Education of the Bar Series, "California Estate Administration," Mrs. Hall, author of the chapter therein, "Family Allowances," observes: "Since the purpose of a family allowance is primarily to extend the deceased's duty of support . . . and both parents of an illegitimate child have that duty (C.C. sec. 196a), it would seem that illegitimate children should be entitled to an allowance. . . ."

---

[3]Moreover, in a later appeal involving the same estate (*Blythe* v. *Ayers,* 102 Cal. 254 [36 P. 522]), it appeared that the illegitimate child claimed also as an heir, the evidence having shown a written acknowledgment of paternity by the deceased father.

We find the logic of that statement compelling. Since the public policy as declared by the California Legislature (in Civ. Code, § 196a) is to treat legitimate and illegitimate children alike so far as the obligation of both parents to support is concerned, and since the statutory provision for a family allowance is an extension of that obligation, the conclusion follows that illegitimate children should be included within the "family" members entitled to an allowance.

Modern society shrinks from application of the Old Testament (Exodus 20) commandment "visiting the iniquity of the fathers upon the children. . . ." Rather we accept the more humanitarian view stated by Judge Leon Yankwich, that "there are no illegitimate children, only illegitimate parents."

Although declaring this concept to be "modern" we of the twentieth century cannot take credit for its innovation. The softening of the harshness of the common law in its discrimination against the illegitimate child (see 29 Cal.L.Rev. 185) began in the California Legislature with our birth as a state. As is pointed out by Justice Traynor in *Estate of Garcia*, 34 Cal.2d 419, 421-422 [210 P.2d 841], the forerunner of Probate Code section 255, giving inheritance rights in the father's estate to the illegitimate but formally acknowledged child, was enacted in 1850 (Stats. 1850, pp. 219-220). The forerunners of legitimating Civil Code sections 215 and 230 (discussed above) were enacted in 1870 (Stats. 1870, §§ 8-9, pp. 530-531). And Justice Traynor in *Estate of Garcia, supra,* states on page 422: "The trend of legislation governing the rights of persons born illegitimate is to give them the same status as those born legitimate." The forerunner of Probate Code section 680 providing for the family allowance was adopted in 1850 (Stats. 1850, § 121, p. 386.) It provided for a family allowance to the "widow" and "minor child or children . . . until letters have been granted, and the inventory has been returned." When the codes were enacted in 1872, the Legislature by Code of Civil Procedure sections 1466 and 1467 included provisions effectually the same as present Probate Code section 680 (without, however, recognizing the widower and adult children). Civil Code section 230 (legitimation by public paternal acknowledgment) was adopted by the same Legislature and has remained unchanged. Civil Code section 215 (legitimation by subsequent intermarriage), originally enacted, as stated above, in 1870, was adopted as a part of the Civil Code in 1874. It, too, has remained unchanged. Civil Code section 196a, making the illegitimate child's father

liable for support, was not adopted until 1913 (Stats. 1913, ch. 132).

█ Legislation is properly considered *in pari materia* with previous and subsequent legislative enactments. (2 Sutherland, Statutory Construction (3d ed. [Horack]) § 5101, p. 509.) █ The purpose of the recital of legislative history given above, therefore, has been to demonstrate an awareness by early California Legislatures of the existence of common law discriminations against the illegitimate child with a conscious whittling away of such restrictions. When, therefore, in the family allowance statute, the Legislature used "minor children" it should not be deemed to have overlooked that the phrase included both legitimate and illegitimate children. Rather we believe that remembering that the term was all-embracing it did not elect to exclude the latter. Nor did it do so in 1913 when it imposed the burden of support upon the "illegitimate father" (by Civ. Code, § 196a). We have reasoned above that the family allowance provision read in connection with the fixing of this support obligation upon the father becomes an extension thereof. █ "Legislation must be given elastic operation if it is to cope with changing economic and social conditions." (2 Sutherland, *op. cit.*, pp. 509-510.) This is referred to as a "theory of progressive construction." (*Wisconsin Tel. Co.* v. *Oshkosh,* 62 Wis. 32 [21 N.W. 828, 830-831].)

These principles of law compel us to interpret Probate Code section 680 providing a family allowance for "minor children" as intending to include illegitimate children as a class benefited.

The order appealed from is affirmed.

Friedman, J., and Moor, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.