[No. 39542. En Banc. May 2, 1968.]

NELLIE ARMIJO, as *Administratrix*, *Plaintiff*, v. GARRETT J. WESSELIUS et al., *Respondents*, TONI PACHECO, *as Guardian, Appellant.*\*

*Velikanje, Moore & Countryman,* by *Morris G. Shore,* for appellant.

*G. William Baker* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for respondents.

FINLEY, C. J.—The question in this appeal is whether an illegitimate child has a legally cognizable claim as a benefi-

\*Reported in 440 P.2d 471.

ciary in a wrongful death action brought for the death of her father under the provisions of RCW 4.20.010. Resolution of the question is dependent upon the meaning to be attributed to the words "child or children" as they appear in RCW 4.20.020.

Tomas Telles died on October 20, 1965, as a result of a collision near Wapato, Washington, between his automobile and a tractor driven by respondent Garrett J. Wesselius. On December 7, 1965, Nellie Armijo, administratrix of the Telles' estate, commenced a wrongful death action against Wesselius. The original complaint named as beneficiaries Telles' eight children by a former marriage, all of whom are emancipated. A ninth child, Toni Marie Telles, approximately 1 year old, was not named as a beneficiary. In terms of this appeal it is undisputed that Toni Marie is the natural but illegitimate issue of decedent.

Appellant Toni Pacheco, mother of Toni Marie, petitioned for and was granted appointment as guardian ad litem of the child. She thereafter sought and obtained from the probate department of the Yakima County Superior Court an order directing the Telles' estate administratrix to join Toni Marie as an additional beneficiary in the wrongful death action. The administratrix's complaint was accordingly amended.[1]

On November 18, 1966, respondents-Wesselius moved for a summary judgment dismissing Toni Marie as a beneficiary of the wrongful death action because of her illegitimacy. The motion was granted, and this appeal followed.

There is no significant dispute as to any material issue of fact. For purposes of this appeal the parties have agreed that (1) decedent and Toni Pacheco, the child's mother, lived together as husband and wife both before and after the birth of Toni Marie; (2) decedent paid all of the hospital and medical bills incurred as a result of the birth of the child; (3) until his death, decedent cared for, loved, and

---

[1]Another action arising out of the same accident was joined with the wrongful death action for trial after the original complaint had been filed. Neither the fact of joinder nor the action so joined, however, has any bearing on this appeal and therefore will not be discussed.

fully supported Toni Marie and her mother; (4) following the birth of the child, decedent had, on numerous occasions, orally acknowledged his paternity of the child;[2] and (5) decedent and appellant, father and mother of Toni Marie, had planned to marry on the Friday following the date on which decedent met his death.

In enumerating the beneficiaries of wrongful death actions, RCW 4.20.020 provides in part as follows:

> Every such [wrongful death] action shall be for the benefit of the wife, husband, *child or children* of the person whose death shall have been so caused. (Italics ours.)

In essence, we must decide whether the words "child or children" in the preceding statute are qualified *sub silentio* by the word "legitimate."

The Fatal Accidents Act of 1846, 9 & 10 Vict., c. 93, generally referred to as Lord Campbell's Act, is the germinant of all wrongful death statutes. W. Malone, *The Genesis of Wrongful Death*, 17 Stan. L. Rev. 1043 (1965). The first wrongful death statute in Washington Territory appeared in 1854. Civil Practice Act, Terr. Laws of 1854 § 496, at 220. This statute created a cause of action for the "widow, or widow and children, or *child or children*, if no widow, of a man killed in a duel . . . ." (Italics ours.) The statute has been amended and expanded a number of times since then, but the words "child or children" have never been specifically qualified legislatively as to legitimacy. Furthermore, this court has not previously considered and construed the words "child or children" as used in the wrongful death statute. The issue now before us is thus one of first impression, and may be resolved by adopting what we individually and collectively consider to be the

---

[2]It is conceded that no written acknowledgment of paternity was ever made. However, even if there were written acknowledgment it would not affect the outcome of the instant case. The wrongful death statutes, unlike the descent and distribution statutes, do not provide for legitimation by written acknowledgment, and the written acknowledgment provision in the descent and distribution statutes applies only "for purposes of intestate succession." RCW 11.04.081.

most amenable, appealing, and convincing judicial disposition.

■ In our judgment, the words "child or children" in RCW 4.20.020 should be construed to include illegitimate as well as legitimate children of deceased parents. No overtones of Victorian or other notions of provincial morality have been noted or implied by legislative enactment and revision of the wrongful death act, and it is but commonsense humanity to conclude that a statute which provides the "child or children" of a decedent with a remedy for lost support encompasses *all* natural or adopted children of the decedent who were dependent upon him regardless of their legitimacy.

Respondents contend, however, that we have in fact previously determined that the words "child or children," when used in statutes, will be considered to mean "legitimate child or children." In support of this thesis, a 52-year-old case is cited, *Peerless Pac. Co. v. Burckhard,* 90 Wash. 221, 155 Pac. 1037 (1916). The *Peerless* case, however, despite its language, in our view can no longer be said to support such a broad proposition, if in fact it ever could. *Peerless* has never been relied upon or even cited by this court for its pronouncements concerning interpretations of the words "child or children" in statutory enactments. Furthermore, research discloses no other Washington case, and none has been referred to this court, which states that the words "child or children" in a statute do not include illegitimate children. On the contrary, we have recently held that the words "child" and "children" in our nonsupport statute, RCW 26.20.030, apply to legitimates and illegitimates alike, despite the fact that no such requirement is explicitly spelled out by the legislature. *State v. Russell,* 68 Wn.2d 748, 415 P.2d 503 (1966). The *Peerless* case, *supra,* is insufficient authority upon which to base a rule regarding interpretation of the words "child" or "children" in the wrongful death statute of this state. The decision is simply one of those proverbial derelicts floating on the sea of the law, and should be treated accordingly.

Respondents cite *Whittlesey v. Seattle*, 94 Wash. 645, 163 Pac. 193 (1917), for the rule that remedial statutes which are in derogation of the common law are to be strictly construed as to their classes of beneficiaries. It is contended that this rule forecloses Toni Marie's chances of becoming a beneficiary under RCW 4.20.020, presumably on the theory that a strict construction of the words "child or children" would not include illegitimates. Respondents' contention, however, is not persuasive. Whether done liberally or strictly, judicial interpretation is necessary even under respondents' rule; illegitimate children are not *necessarily* excluded under the terms of RCW 4.20.020. This being so, we must still engage in a process of weighing and balancing competing values, and it appears to us that social policy considerations favoring inclusion of illegitimate children as beneficiaries should be given effect. As stated in 3 J. Sutherland, Statutory Construction § 7205 (3d ed. 1943):

[M]any of the decisions in the past [construing wrongful death statutes], and a few of the later ones as well, have crippled the operation of this legislation by employing a narrow construction on the basis that these statutes are in derogation of the common law. However, it may now safely be asserted that the better and modern authorities are in agreement that the objectives and spirit of this legislation should not be thwarted by a technical application.

Finally, respondents urge that the resolution sought by appellant would place decedents' estates at the mercy of unscrupulous charlatans who will pose as illegitimate children for the purpose of reaping undeserved benefits. Suffice it to say that such a problem does not exist in the instant case, as it is undisputed that Toni Marie is decedent's daughter and that she was under his care and support until his death. In addition, as to any individuals contending they are illegitimate children of a decedent, the burden of proof is theirs and is a heavy one—certainly no less onerous than in other litigated cases. We are convinced that the burden of proof, as in other lawsuits, will provide estates ample protection and should remove any reasonable fear of fraudulent claims.

Although our decision allowing appellant's daughter to be a beneficiary of the wrongful death action being brought for the death of her father is contrary to a majority of the cases in other jurisdictions, see Annot., 72 A.L.R.2d 1235 (1960), it is clearly in accord with a decisive current trend in legislative and decisional law which ignores legitimacy when creating or applying statutes designed to benefit children. See, e.g., Metropolitan Life Ins. Co. v. Thompson, 368 F.2d 791 (3d Cir. 1966) (illegitimate child is a "child" within the meaning of Federal Employee's Group Life Insurance Act); In re Woodward's Estate, 230 Cal. App. 2d 113, 40 Cal. Rptr. 781 (1964) (term "minor children" in family support statute includes illegitimates); State v. Russell, 68 Wn.2d 748, 415 P.2d 503 (1966) (illegitimacy of child no defense to prosecution for nonsupport); Wade v. State, 39 Wn.2d 744, 238 P.2d 914 (1951) (under certain circumstances and when welfare of child so dictates, father may have custody of illegitimate child).

The reason for this trend is clear. Society is becoming progressively more aware that children deserve proper care, comfort, and protection even if they are illegitimate. The burden of illegitimacy in purely social relationships should be enough, without society adding unnecessarily to the burden with legal implications having to do with the care, health, and welfare of children. As stated in In re Woodward's Estate, supra, at 118, 40 Cal. Rptr. at 784:

> Modern society shrinks from application of the Old Testament (Exodus 20) commandment "visiting the iniquity of the fathers upon the children. . . ." Rather we accept the more humanitarian view stated by Judge Leon Yankwich, that "there are no illegitimate children, only illegitimate parents."

Significantly, a very persuasive argument can be made that a decision contrary to ours would deny appellant's daughter her Fourteenth Amendment right to equal protection of the laws, since there is no valid social reason, for purposes of welfare legislation, for distinguishing between members of the class "illegitimate children" and other members of the broader class "children" to which the mem-

bers of the more narrow class belong. *See* H. Krause, *Equal Protection for the Illegitimate,* 65 Mich. L. Rev. 477 (1967). It is unnecessary for us to reach this constitutional question, however, for it is apparent that construction of a statute to thrust the burden of illegitimacy upon an innocent child would be an unfortunate and ill-advised exercise of our judicial function, and one we choose to avoid.

The order granting respondents' motion for a summary judgment dismissing appellant's daughter as a beneficiary of the wrongful death action being brought for the death of her father is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

HILL, J. (dissenting)—I dissent. The legislature created the right of recovery for a wrongful death afforded by RCW 4.20.010, and in the legislature alone rests the power to determine which classes of persons are entitled to the benefits thereunder. Prior to the adoption of Lord Campbell's Act, no person, whether wife, husband, child (legitimate or illegitimate), or other relative of the victim of a wrongful killing could recover any damages therefor. Such a cause of action was unknown to the common law, and presently exists in this state only by virtue of the statute.

The majority has given some very cogent reasons why the legislature should amend the statute to give a right of action to the illegitimate children of one wrongfully killed. There are probably cogent reasons why it should not be so amended, including the difficulties that would arise in combatting false and fraudulent claims of paternity, the putative father being dead. It is unquestionably a matter which the legislature should consider; but, by the same token, it should require the exercise of judicial self-restraint. It is not for the court to crusade against any remaining vestiges of "Victorian or other notions of provincial morality"; the only question is did the legislature intend to grant a cause of action to illegitimate children under the terms of RCW

4.20.020. Judge Donworth[3] has made clear (at least to my satisfaction) that the legislature did not so intend, and I adopt the following portions of an opinion in this case prepared by him before his retirement as my dissent.

This court, in *Hedrick v. Ilwaco Ry. & Nav. Co.*, 4 Wash. 400, 402, 30 Pac. 714 (1892), stated that:

> It is settled beyond controversy that, at common law, no civil action could be maintained for damages resulting from the death of a human being. But that defect of the common law has been obviated by statute in the several states analogous to the English statute, commonly known as Lord Campbell's act (9 and 10 Vic. c. 93), though often varying more or less from its provisions, especially as to the party entitled to maintain the action. The object and purpose of these statutes is to provide a remedy whereby the family or relatives of the deceased, who might naturally have expected maintenance or assistance from the deceased, had he lived, may recover compensation from the wrongdoer commensurate with the loss sustained. Usually the right of action, as in Lord Campbell's act, is given to the executor or administrator, and the sum recovered inures to the benefit of the particular individuals designated by the statute.

4 Chitty's Eng. Stat. (6th ed.) 587, Lord Campbell's Act, 9 & 10 Vict. c. 93 (titled The Fatal Accidents Act, 1846), provided, in part:

> Whereas no action at law is now maintainable against a person who by his wrongful act, neglect, or default may have caused the death of another person, and it is oftentimes right and expedient that the wrongdoer in such case should be answerable in damages for the injury so caused by him: BE IT THEREFORE ENACTED, that whensoever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have

---

[3]Judge Charles T. Donworth, while a member of this court, prepared a departmental opinion affirming the trial court in this case. Following his retirement, the case was heard *En Banc*, and his views did not prevail. The entire dissent, except the words "I dissent" at the beginning and the second paragraph are as written by Judge Donworth, except for changes of "we" to "I" in those places where a change was necessary by reason of the change from an opinion for the court to a dissent, and excepting also the concluding sentence.

entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

2. Every such action shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executor or administrator of the person deceased, and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought; . . . . (Footnotes omitted.)

Under that enactment, the term "child" included "a child *en ventre sa mere (The George and Richard* (1871), L. R. 3 A. & E. 466); but not an illegitimate child (*Dickinson v. N. E. Rail. Co.* (1864), 33 L. J. Ex. 91; Mews Digest, x. 105; *Wilson's Trusts, Re* (1865), 35 L. J. Ch. 243; Mews Digest, viii. 232)." See 4 Chitty's Eng. Stat. (6th ed.), p. 588, footnote (h).

Statutes based on Lord Campbell's Act have existed in this jurisdiction from its inception. The early history of this state's legislation on the subject was set forth in *Whittlesey v. Seattle,* 94 Wash. 645, 647, 163 Pac. 193 (1917), as follows:

The first territorial legislature passed an act giving a right of action to "the widow, or widow or children, or child or children, if no widow, of a man killed in a duel."[4] The scope of the law was extended, by amend-

---

[4]It should be noted parenthetically that the legislature also enacted in Laws of Wash. Terr. 1854, An Act to Regulate Marriages, § 3, p. 404, a provision that: "All children born of marriages declared void by the preceding section [*i.e.* bigamous marriages and cases of consanguinity], and *all children born of persons living and cohabiting together, as man and wife,* and all children born out of wedlock whose parents shall intermarry, *shall for all purposes be legitimate.*" (Italics ours.)

The first and last proviso of that enactment, in substance, survive in the present RCW 26.04.060 and 26.08.060. The second proviso was apparently repealed by Code of 1881, and is not a part of the present law of this state.

ment, in 1875 and in 1909. The act as it now [1917] appears (the act of 1854 in Roman lower case type; the act of 1875 in Roman capitals; and the act of 1909 in italics), is as follows:

"§ 183. WHEN SURVIVORS' HEIRS OR REPRESENTATIVES MAY SUE.—The widow, or widow and her children, or child or children if no widow, of a man killed in a duel, shall have a right of action against the person killing him, and against the seconds and all aiders and abettors. WHEN THE DEATH OF A PERSON IS CAUSED BY THE WRONG-FUL ACT OR NEGLECT OF ANOTHER, HIS HEIRS OR PERSONAL REPRESENTATIVES MAY MAINTAIN AN ACTION FOR DAMAGES AGAINST THE PERSON CAUSING THE DEATH. *If the deceased leave no widow or issue, then his parents, sisters or minor brothers who may be dependent upon him for support and who are resident within the United States at the time of his death, may maintain said action.* WHEN THE DEATH OF A PERSON IS CAUSED BY AN INJURY RECEIVED IN FALLING THROUGH ANY OPENING OR DEFECTIVE PLACE IN ANY SIDEWALK, STREET, ALLEY, SQUARE OR WHARF, HIS HEIRS OR PERSONAL REPRESENTATIVES, *or if deceased leaves no widow or issue, then his parents, sisters or minor brothers who may be dependent upon him for support, and who are resident within the United States at the time of his death,* MAY MAINTAIN AN ACTION FOR DAMAGES AGAINST THE PERSON WHOSE DUTY IT WAS, AT THE TIME OF THE INJURY, TO HAVE KEPT IN REPAIR SUCH SIDEWALK OR OTHER PLACE. IN EVERY SUCH ACTION THE JURY MAY GIVE SUCH DAMAGES, AS UNDER ALL CIRCUM-STANCES OF THE CASE MAY TO THEM SEEM JUST. [L. '09, p. 425, § 1; Cf. L. '54, p. 220, § 496; L. '75, p. 4, § 4; Cd. '81, § 8; 2 H. C., § 138.] Rem. Code, § 183.

The court, in *Whittlesey, supra,* held that, under the language of the statute at that time, no right of action was given in favor of surviving children for the wrongful death of their mother. The legislature quickly responded, and in Laws of 1917, ch. 123, p. 495, enacted the present wrongful-death statute. Sections 1 and 2 of that enactment, now codified as RCW 4.20.010 and 4.20.020, respectively, provide that:

Section 1. When the death of a person is caused by the wrongful act, neglect or default of another his personal representative may maintain an action for damages

against the person causing the death; and although the death shall have been caused under such circumstances as amount, in law, to a felony.

Sec. 2. Every such action shall be for the benefit of the wife, husband, *child or children* of the person whose death shall have been so caused. If there be no wife or husband or child or children, such action may be maintained for the benefit of the parents, sisters or minor brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his death. In every such action the jury may give such damages as, under all circumstances *of the case, may to them seem just.* (Italics ours.)

No decisions of this court have been found bearing directly on the question presented, *i.e.* whether an illegitimate child is included within the meaning of the terms "child or children" as used in this statute and, therefore, can participate as a beneficiary in an action for the wrongful death of his father. In other jurisdictions, the almost unanimous weight of authority is that such a child cannot so participate. 72 A.L.R. 2d 1235.

The applicable general rule of statutory construction in this state is that:

Where the word child or children is used in a statute, *without qualifying words,* and where the context does not show a contrary meaning, the general, if not the universal construction, is that the word child or children does not include an illegitimate child. *Peerless Pac. Co. v. Burckhard,* 90 Wash. 221, 224, 155 Pac. 1037 (1916).

There being no contrary meaning indicated by the context of RCW 4.20.020, the conclusion seems logically to follow that an illegitimate child is not a child within the purview of the statute, and therefore may not participate as a beneficiary in a wrongful-death action.

Appellant contends, however, that the wrongful-death statute, being remedial in nature, should be construed liberally, citing *Gray v. Goodson,* 61 Wn.2d 319, 378 P.2d 413 (1963), *Johnson v. Ottomeier,* 45 Wn.2d 419, 275 P.2d 723 (1954); *Cook v. Rafferty,* 200 Wash. 234, 93 P.2d 376 (1939).

However, as pointed out in *Whittlesey v. Seattle, supra* at 647:

Some courts have held the Wrongful Death act, which, in some form, is common to all the states (3 Shearman & Redfield on Negligence, Appendix p. 2051 *et seq.*), to be in derogation of the common law, and therefore, to be construed strictly. Others have held the act to be remedial and have construed it liberally. But, having in mind our own decisions, we agree with Judge Cooley, who suggests the correct rule:

"That such statutes should receive a strict construction in determining the persons or classes of persons who are entitled to their benefit and a liberal construction in applying the statute in their favor." 1 Cooley, Torts (3d ed.), p. 553.

I can see no alternative, under the existing statutes and rules of construction just cited, but to hold that an illegitimate child may not be included as a beneficiary, under RCW 4.20.020, in a wrongful-death action.

Appellant recognizes that the weight of authority supports our interpretation of the statute, but urges that this court depart from these holdings, and cites as justification for such departure what he terms a trend toward the broader recognition of the rights of an illegitimate child.

In support of his argument that there exists such a trend, appellant cites, from our own jurisdiction, the cases of *Wade v. State,* 39 Wn.2d 744, 238 P.2d 914 (1951), and *State ex rel. Smith v. Superior Court,* 23 Wn.2d 357, 161 P.2d 188 (1945), wherein we recognized the right of a father to the custody of his illegitimate child.

Appellant also cites *State v. Russell,* 68 Wn.2d 748, 415 P.2d 503 (1966), wherein we held that the illegitimacy of a child was no defense in a prosecution of the father, under RCW 26.20.030, for nonsupport, and *Peterson v. Eritsland,* 69 Wn.2d 588, 419 P.2d 332 (1966), wherein this court sustained a contract between the mother and the putative father of an illegitimate child providing for the support of the child by the father as being in accord with public policy.

Appellant further points out that, under RCW 11.04.081 of the new probate code, a more liberal approach is indicated regarding illegitimate children. Under the former enactment, RCW 11.04.080, the father was required to:

[I]n writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child.

Under the 1965 enactment, it is sufficient if the father merely acknowledges the child in writing, no witnesses being required.

I note, parenthetically, that the statutes relating to descent and distribution are inapplicable to the question at bar. The written acknowledgment required by RCW 11.04.081 does not make the child legitimate for all purposes, but only "for purposes of intestate succession." RCW 11.04.081. Hence, even had decedent in this case acknowledged the child in writing, the child still would have been unable to participate as a beneficiary under the wrongful-death statute.

But most importantly, it should be noted that the "liberalization" of the illegitimate child's rights under the statutes of descent and distribution was effected by *legislative enactment*. Likewise, it is in the legislative branch of our government that any change in the rights of an illegitimate under the wrongful-death statutes must be initiated.

While it is true that this court, recognizing the injustice of the ancient doctrine of *nullius filius* has been quick to broaden the rights of illegitimates *where permitted to do so by* the enactments of the legislature (*e.g. Wade v. State, supra; State ex rel. Smith v. Superior Court, supra; State v. Russell, supra,* and *Peterson v. Eritsland, supra*), we have in no case gone beyond a reasonable construction of a particular enactment to attain a result clearly not intended by the legislature. We are bound to continue that policy in the present case.

I have carefully considered the remaining arguments advanced by appellant, the cases cited by him from other jurisdictions, and the legislative enactments relating to

other areas of law. While I am in sympathy with her position in this case, we should conclude that, under existing law, an illegitimate child may not participate as a beneficiary under RCW 4.20.020. The legislature is the proper forum for any change to be made under that provision.

I would affirm the judgment of the trial court.

WEAVER, NEILL, and McGOVERN, JJ., concur with HILL, J.