ESTATE OF ECKER: KLEIBER, Appellant, vs. ECKER, Respondent.

*May 6—May 31, 1921.*

*Bastards: Evidence as to parentage: Sufficiency: Acknowledgment in writing: Form: Purpose.*

1. Evidence that the contestant in administration proceedings was received by the intestate as a son and lived as a member of his family until marriage, and afterwards resided in the same neighborhood, the relationship which would naturally exist between a father and an adult son continuing until the death of the intestate, is *held* to establish that he was intestate's son though never formally adopted or acknowledged as such.
2. Under sec. 2274, Stats., providing that every illegitimate child shall be considered as heir of the person who shall, in writing signed in the presence of a competent witness, acknowledge himself to be the father of such child, a contract properly witnessed, entered into jointly by intestate and contestant, who claimed to be his only heir at law, with one S., stating that intestate "and son" were purchasers from S., and a certain order written by intestate directing a saloonkeeper to "give my son," naming contestant, a keg of beer, constituted sufficient acknowledgment by the intestate that he was the father of contestant, though the writings were not made for the purpose of establishing his heirship or of complying with the statute. *Richmond v. Taylor,* 151 Wis. 633, followed.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Joseph Ecker died intestate April 30, 1918, his wife having died some years before. He left surviving his sister, the appellant, and several children of a deceased brother. There were no children as a result of his marriage.

It appears that in 1866 one Mary Halda made a complaint before a justice of the peace in which she charged that the deceased, Joseph Ecker, was the father of her unborn child. A warrant was issued. Subsequently Mary Halda gave birth to a male child and named him *Adolph Ecker*, by which name he has ever since gone. Soon after the birth of *Adolph*, Mary Halda married one Frank Steinfest, leaving the child *Adolph* with her parents, where he remained until he was four years of age. The maternal grandparents then took *Adolph* to the residence of Joseph Ecker, who in the meantime had married, and *Adolph* thereafter remained as a member of the family of Joseph Ecker and was in all respects treated by Joseph Ecker as his son. *Adolph* subsequently married a daughter of a neighboring farmer and ever since his marriage has resided in the neighborhood where Joseph Ecker lived. Joseph Ecker was never adjudged the father of *Adolph*, and Joseph never adopted *Adolph* in the manner prescribed by statute.

Upon the death of Joseph Ecker, *Adolph Ecker* made a petition to the county court of Manitowoc county for the administration of the estate of Joseph Ecker, alleging that he was the only heir at law of the deceased, and shortly thereafter *Elizabeth Kleiber*, the appellant, petitioned the county court for administration of the estate of Joseph Ecker and alleged that she was one of the heirs at law and the only surviving sister of Joseph Ecker. The case was tried in the county court and judgment was entered in favor of *Adolph*. An appeal was then taken to the circuit court, where the case was tried before the court without a

jury, and the circuit court also found in favor of *Adolph,* and from the judgment entered *Elizabeth Kleiber,* the sister, appeals.

For the appellant there was a brief by *E. S. Schmitz* of Manitowoc, attorney, and *Schmitz, Wild & Gross* of Milwaukee, of counsel; and the cause was argued orally by *A. J. Schmitz.*

For the respondent there was a brief by *Hougen, Brady & Meyer* of Manitowoc, and oral argument by *A. L. Hougen.*

ROSENBERRY, J.    While the finding of the court that *Adolph Ecker* is the son of Joseph Ecker is assigned as error by the appellant, that fact is so conclusively established that it may be treated as a verity in this case.    In every possible way over a long period of time, with the single exception of formally adopting him or acknowledging him as his son by some formal document, Joseph Ecker treated *Adolph* as his son.    *Adolph* was born January 2, 1866, so that the witnesses to the transactions which occurred at the time *Adolph* became a member of the family of Joseph have passed away with the exception of Mary Halda, the mother, who appeared at the trial and testified in behalf of *Adolph.    Adolph* was received as a son, lived as a member of the family of Joseph Ecker until his marriage, and thereafter the relationship which would naturally exist between a father and an adult son continued down to the time of the death of Joseph.    The decisive question in this case is, Did Joseph Ecker acknowledge himself to be the father of *Adolph Ecker* so as to entitle *Adolph* to the benefit of the provisions of sec. 2274, Stats.?

"Every illegitimate child shall be considered as heir of the person who shall, in writing signed in the presence of a competent witness, have acknowledged himself to be the father of such child."

The evidence to sustain the finding upon this branch of the case was practically without dispute, and the question is, Did the writings amount to a compliance with the statute? The court found:

"8. That about twenty years before the time of this trial said Joseph Ecker and his son *Adolph Ecker* entered into a written contract with one F. F. Stelling for the purchase from said Stelling of a threshing machine; that in the body of that contract it was stated that Joseph Ecker and son were the purchasers of the machine. That the contract was signed by said Joseph Ecker and *Adolph Ecker* and said F. F. Stelling; that the said contract in writing was signed by the said Joseph Ecker and *Adolph Ecker* in the presence of said F. F. Stelling and that he, F. F. Stelling, was a competent witness thereto. That said written contract has since been lost, and after due search could not be found to be produced at the trial.

"9. That while the said *Adolph Ecker* was a boy and was living with said Joseph Ecker, said Joseph Ecker on frequent occasions wrote out a slip of paper, an order addressed to a saloonkeeper at Brillion, to deliver a keg of beer to said *Adolph* for said Joseph Ecker. These orders *Adolph* took to the saloonkeeper and procured the beer. On some of these occasions said *Adolph Ecker* was accompanied by Fred Wolfe and at other times by John Schreiber. One of these orders for beer was written by the said Joseph Ecker in the presence of said Fred Wolfe; others of these orders were written by said Joseph Ecker in the presence of said John Schreiber. Said Fred Wolfe and said John Schreiber were competent witnesses. Said orders were written by said Joseph Ecker in the German language; one of them was read by said Schreiber and its meaning in the English language is, 'Give my son *Adolph* a keg of beer on my name. Joseph Ecker.' That order was signed by Joseph Ecker in the presence of said John Schreiber, and he was a competent witness thereto."

The trial court held that these writings constituted a sufficient acknowledgment on the part of Joseph Ecker that he was the father of *Adolph* and that *Adolph* thereby

became entitled to inherit in accordance with the provisions of sec. *2274*.

The provisions of sec. 2274 were quite fully discussed in *Richmond v. Taylor,* 151 Wis. 633, 139 N. W. 435. It is there stated:

"It is not essential that the written acknowledgment shall be made for the express purpose of establishing heirship or of a compliance with the statute. It may be made in entire ignorance of the statutory requirements and for purposes other than that of creating heirship. . . . It does not require that the witness should attest or subscribe the writing or acknowledgment—only that the person making it shall sign in the presence of the witness. . . . Neither does it require that the acknowledgment of paternity shall be in precise formal language. It is sufficient if it appear with reasonable clearness and certainty from the written words that the paternity of the child is acknowledged."

It is considered that the trial court correctly held that the writings referred to in the findings were a sufficient acknowledgment. Our attention has been called to many cases in other jurisdictions where conclusions have been reached which are at variance with those reached in the case of *Richmond v. Taylor.* We see no reason, however, for disturbing the ruling made in that case.

Other questions are raised and discussed in briefs of counsel, but in view of the result which we have reached we see no reason for further discussion.

*By the Court.*—Judgment affirmed.