## ESTATE OF DEXHEIMER.

*October 9—November 7, 1928.*

*H. H. Bodenstab* of Milwaukee, for the appellant.

For the respondent there was a brief by *Detling, Detling & Whiffen* of Sheboygan, and oral argument by *Henry A. Detling.*

DOERFLER, J.   The deceased married his wife, Anna, in the year 1893, and the latter died on the 20th day of June, 1927.   No children were born as the result of this marriage.

While Martha Bublitz, then between sixteen and seventeen years of age (a niece of Mrs. Dexheimer), was stopping at the Dexheimer home, on the 10th day of August, 1905, she gave birth to Earl H. Dexheimer, who is conceded to be an illegitimate child.   The Dexheimers, being childless, took him into their home, had him baptized as their own child, and thereafter in all respects treated him as though he were their natural offspring.   At school and in the neighborhood of the Dexheimer home Earl was considered as the child of Julius G. Dexheimer and his wife.   The deceased Dexheimer was a carpenter contractor, and when Earl arrived at maturity he was taken into Dexheimer's business as a partner, and the business was conducted under the name of Dexheimer & Son.   When Earl arrived at the age of twenty-one years he married his wife, Irma.

Anna Dexheimer at the time of her death was the beneficiary in a certain policy of insurance of the Independent Order of Foresters, belonging to her husband, and on the 19th day of July, 1927, Anna being then deceased, her husband made an application to the order for the purpose of changing the beneficiary, substituting, in place of his wife, Earl H. Dexheimer and his wife Irma, Earl being denominated in such application as the applicant's son and Irma as his daughter-in-law.   It also appears that Earl and his wife signed their consent to the proposed change of beneficiary, and both Earl and his wife were present at the time the application was signed and executed by the applicant, Julius G. Dexheimer.

Sec. 237.06 of the Statutes provides as follows:

"Every illegitimate child shall be considered as heir of the person who shall, in writing signed in the presence of a competent witness, have acknowledged himself to be the father of

such child or who shall be adjudged to be such father under the provisions of sections 166.01 to 166.16, or who shall admit in open court that he is such father, and shall in all cases be considered as heir of his mother, and shall inherit his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; . . ."

It is the contention of Earl H. Dexheimer that the execution of this application for change of beneficiary, in which Earl was denominated as a son, in the presence of his wife, Irma, amounted to an acknowledgment by Julius G. Dexheimer that he was the father of Earl, in compliance with the provisions of sec. 237.06 of the Statutes, and that in consequence thereof Earl must be considered as the heir of Julius G. Dexheimer, and that he therefore is entitled to be appointed administrator of the estate of the deceased and to inherit all of his property.

No contention was made by appellant that Julius G. Dexheimer was the natural father of Earl, but it is insisted that the recognition of the relationship of father and child, in the application for change of beneficiary in the policy of the Foresters, is in itself sufficient to constitute Earl as the sole heir at law of Julius G. Dexheimer, regardless of whether the latter was the natural father of Earl or not. In taking this position we feel confident that appellant is in error.

Sec. 237.06 of the Statutes is entitled "Heirship of illegitimates; issue of null marriage." This section deals with illegitimate children under ch. 237, entitled "Descent." A reading of the section above referred to clearly indicates that the acknowledgment therein referred to is not an acknowledgment of an assumed relationship, but of an actual blood relationship. The section first provides: "Every illegitimate child shall be considered as heir of the person who shall, in writing signed in the presence of a competent witness, have

acknowledged himself 'to be the father of such child." In construing the language in this section, unless a different intent becomes apparent, we must give to it its ordinary meaning. The meaning of the words "illegitimate child" is so definite and well established that it requires no comment. When we refer to the "father" of an illegitimate child we mean the person who is the natural father of such child—the procreator of such child. There is nothing contained in the statute which requires a different interpretation or construction. Provisions subsequent to the part of the statute last above quoted strongly confirm what has heretofore been said. The statute then continues: "or who shall be adjudged to be such father under the provisions of sections 166.01 to 166.16." Ch. 166 of the Statutes was enacted by the legislature for the express purpose of establishing the paternity of illegitimate children, so that the father, when ascertained, might be compelled to provide for his illegitimate offspring, etc. A reading of the foregoing two provisions of sec. 237.06 clearly demonstrates that the legislature intended to establish an illegitimate child as an heir where there was either a conviction in a bastardy suit, or where, in lieu of such conviction, there was an acknowledgment, as required by the statute, of paternity. In the one case the judgment of conviction in a bastardy suit is all that is required. Such a conviction comes at the end of a bastardy proceeding, and results in a solemn adjudication establishing paternity of the child. However, instead of the solemn adjudication above referred to, the legislature has seen fit to place upon a par therewith a written acknowledgment, executed as provided for by the statute; and, as a further equivalent to the conditions above referred to, the statute also creates heirship where the person in open court acknowledges that he is the father. In the last named instance it is intended that the acknowledgment in open court shall act as the equivalent of a judgment of con-

viction, or of a written recognition signed by the person in presence of a competent witness.

This statute has been construed in two comparatively recent cases, viz.: *Richmond v. Taylor*, 151 Wis. 633, 139 N. W. 435, and *Estate of Ecker*, 174 Wis. 432, 182 N. W. 977. These cases, however, differ materially from the instant case, because in each there was a strong background of illicit relations. Therefore, when the written acknowledgments as required by the statute were made, no doubt whatsoever remained that the acknowledgments in these cases recognized a blood relationship, and not one that was merely assumed. In the *Richmond Case* it was urged upon the court that the petitioner might inherit even if she were not his child. The court, however, found it unnecessary to pass upon that question.

A number of witnesses were called who testified that it was common knowledge in the Dexheimer family since Earl was born that Martha Bublitz was his mother and that Gerald Roddy was his father. Gerald Roddy was a neighbor of the Bublitzes, and the testimony shows that about seven years after Earl was born he married Martha. There was no evidence in the case to contradict the reputation so established in the family, nor was there any evidence to the effect that Roddy was not the father of Earl. Under this state of the evidence, sec. 245.36 of the Statutes becomes applicable, which provides:

"*Legitimation of child by marriage.* In any and every case where the father and mother of an illegitimate child or children shall lawfully intermarry, such child or children shall thereby become legitimated and enjoy all the rights and privileges of legitimacy as if they had been born during the wedlock of their parents. . . ."

The child having been legitimated by the marriage of its parents, sec. 237.06 of the Statutes does not apply.

The testimony as to family reputation was objected to by counsel, but was received by the court over objection. The admissibility of such evidence seems to be well recognized by the authorities. In *Wright v. Hicks,* 15 Ga. 160, it is said:

"This kind of proof is sufficient as to pedigree, and the title to property consequent thereon. The relatives are properly supposed to be cognizant of such matters. They are interested in having them rightly understood in protecting the good name and fame of the family from injurious reports."

In *Estate of Heaton,* 135 Cal. 385, 67 Pac. 321, it is said in the syllabus:

"Paternity cannot be proved by general reputation; and it was error to admit proof that, according to the general reputation in the community where she resided, the respondent was the daughter of the deceased person claimed as her father. It is only the common reputation in the family, and not the common reputation in the community, that is admissible on questions of pedigree." See, also, *Estate of Pickens,* 163 Pa. St. 14, 29 Atl. 875, 25 L. R. A. 477; 7 Corp. Jur. 944.

No contention is made in the instant case that Earl was ever adopted by Julius G. Dexheimer and his wife. Ch. 322 of the Statutes sets forth the proceedings necessary for the adoption of a child. This chapter applies both to legitimate and illegitimate children. If the Dexheimers had in mind that Earl should inherit their property if they died intestate, the only way this could have been accomplished would have been through adoption proceedings.

In the *Richmond Case, supra,* it is said:

"It is not essential that the written acknowledgment shall be made for the express purpose of establishing heirship or of a compliance with the statute. It may be made in entire ignorance of the statutory requirements and for purposes other than that of creating heirship, provided there is otherwise a compliance with the statute."

The law as thus quoted from the *Richmond Case* was re-affirmed in *Estate of Ecker, supra,* and may now be deemed as the settled law of this state; and while there is a lack of unanimity on this subject in the authorities outside of Wisconsin, the weight of authority seems to be in harmony with the established Wisconsin doctrine.

But while no formal document, expressly executed in accordance with the statute, acknowledging paternity, is necessary, nevertheless the paternity must be acknowledged under such facts and circumstances as to lead to a reasonable conclusion that the person making the acknowledgment is in fact the natural father of the child. Earl Dexheimer was taken into the family at the time of his birth, and continued to remain a member of the Dexheimer family until he was twenty-one years of age. He received all of the care, attention, love, and affection of a natural child. Such a situation is a highly laudable one. It inures to the benefit of mankind in general. It recognizes the brotherhood of man, and does not confine love and affection to purely blood relationship. Next to the actual legal adoption of an illegitimate child, the writer can conceive of no act or deed which reflects true, practical Christianity in a greater degree.

When we reflect briefly upon the great responsibility which the deceased Dexheimer and his wife assumed when they took this child into their family at the time of its birth, where it was retained until the child's maturity,—to say nothing of the expense connected with the maintenance of such a relationship; when we also consider, as appears from the evidence, the care that was exercised in order that Earl might not become informed of his illegitimacy, and to permit him to remain in the belief that he actually was their legitimate child; and when we further bear in mind the maternal and paternal love and affection which was showered upon him during his infancy and maturer years, we become firmly convinced that such an assumed relationship of parent and child should be

encouraged and not discouraged, and that even the suspicion of immorality and crime should not attach or be permitted to attach to one in the situation of Julius G. Dexheimer, unless and until such relations have been reasonably established.

We therefore conclude: First, that the deceased Julius G. Dexheimer was not the natural father of Earl Dexheimer; second, that sec. 237.06 of the Statutes is aimed at the natural father, and not one who assumes the relationship of father to an illegitimate child; and third, that in any event it has been satisfactorily established that Gerald Roddy and Martha Bublitz are, respectively, the father and mother of Earl, and that by their marriage Earl has been legitimated, so that he must now be deemed to be their son, the same as though he were born during lawful wedlock.

*By the Court.*—For the reasons herein stated the order and judgment of the lower court are affirmed.